And it's important to hear you guys out. And I represent this to all of you who are out there. So the significant issue that's important is whether, at least in this situation, is it the government, because if these governments call by themselves, those that associate with the government, is it the government that has the obligation to produce a particular amount of material in regard to the outcomes? I would say that largely, it is not. But as far as I'm aware, the speaking courts can have an issue with potentially how important the material and the art can be in the same way. But this court is not addressing this issue today. So if you're interested in hearing me, there are some significant issues. One is that there's quite a bit of students who have just been sitting here sitting in the classroom. And they're asking, well, what is the problem? And the fact is, so we may have the opportunity. But the question is, what is the problem? Why is she afraid? Why does she not want us to do what she wants? Well, the problem is they don't really know. And the main reason is they don't know because, and I will say that, it's not a target. St. Claude told me this morning that, in fact, they did produce a third part of the thing, which is the grouchy after our meeting. There are no obligations to produce the grouchy. There are no obligations to the OPD. They did produce it after our offense was declared. So I know it's in there partly because the government gets to make a decision. First, they said, well, we don't have to produce anything because it was called by the defense. But they haven't produced quite a lot. What we did is we did support more things. We stopped some violence. And we produced quite a lot. It's just some evidence that he has, that Navarro has, has maybe given some information to the OPD and that he also had given information and started cooperating with the state just for very, very brief periods. So, you know, the problem is that because of what I'm saying, we don't have to, and it's not that you can only say, we don't have to produce this evidence because it's evidence. But they said, well, we don't have to go. We just don't have to tell you we don't have to produce it. And that's where you have the problem. You have a community that is OPD oppressed. And you're just saying, well, we don't have to go to the local police department and ask them. And then, of course, they also released the data. Now, if you're like, I have people I'm calling to call me out, that they did perhaps go and ask. And so people found this. And if you look at what the council was talking about, it's really not that we made any kind of serious or complete effort to obtain legal material. And that is that, and all of the excerpts is that. So. I just have to bring it up to you that I, as a medical witness, I'm a biologist at the University of New York. And you call that a particularly false device of witnesses. And I don't think it should be seen that way. Just, you know, of course, I'm just going to say that I'm a biologist at the University of New York. But what you're suggesting is that we do that as a subpoena. That is, we report what the medical department told the original. And it's not a defense. In most medical situations, GPOs can be reported. And that's a question. I mean, I think that's one thing that the truth that it's not a subpoena, so to speak. Well, I think, first of all, I mean, we've been discussing this quite a bit now. And I would say that, I agree. Well, I think, you know, ultimately, it's not a subpoena. And it's a case law, which I think will be a case-based subpoena. But in terms of quality measures, I think when you have a witness that is associated with having any cooperating or any informant that's associated with the government, the government has to make the effort to have a subpoena, especially if you have a witness where he is cooperating with the federal government. And he's an informant. And the government has to at least inquire the associated agencies, which are here, the Open Police Department, the Department of Homeland Security, jail and agency. So yeah, I think that's part of it. I'm sorry. I'm just presuming that's it. Well, I think you do need to provide a subpoena. You do need to provide a subpoena. It's a case law. Yes, although the court then rules that the subpoena is not a subpoena. But the court then will, or should have ordered that if you need to hear the subpoena, the subpoena is not a subpoena. So yeah, I think that's the question. Yeah, I think that's the problem. The court, I mean, it's part of the problem. The court initially said, here you have a subpoena. It should have gone from there. The question of order, the subpoena over here is not a subpoena. Along those lines, we should also have a subpoena. It's not clear. It's not at all clear. And then finally, there's an arrest in 2012 before the end of this case, which was George Jefferson's case. He's on bond. Then there's another arrest. The charges are dismissed. It's low enough that you would think that it's largely an independent party.  And the charges are dismissed. It's largely an independent party. And the charges are dismissed. It's just that we've seen some indications that the process is not clear exactly what. Unfortunately, it makes sense to also look at my boss' background. It makes it less possible for such a change to happen. The U.S. government has been ambitious in this case. It's been bringing in a lot of great interest as well. The ultimate question that I have here is the question of is the U.S. government as a source. The question is whether the information that we're getting is contagious at all. Why have they been so significant in this effort? Well, let's take out this thing. If we don't know the source, it's a free hand for sharing. And it's either average, hopefully the material is stable, average. And it means it's the slowest course of action. I think the U.S. government is full of problems. There's a lot of crime, but there's also a whole lot of bad stuff. There's cocaine. There's more bad news. There's drug cocaine. There's fraud. All right. That's the end. And I think that's where I came from. So, what I was saying is that he has a very narrow understanding of the facts. And it's really large to worry as to what's going to be foreseen. It's become so long not to acknowledge those issues with the U.S. government. And that's what's large. The second part of that information is also drug coverage, which is that, you know, Department of Health has said if she had been informed of the contact and spartan hearing, she would have gone further. She would have asked a direct question. But she didn't ask because she was concerned about this. She would have asked, you know, do you believe he was supposed to tell them given that you're not informed of the contact? The text of the hearing is that you're only going to the first quarter of the meeting. You're only going to the first quarter of the meeting. The only thing you are going to see is the contact and I'm so close to it. So, remember, he came to me and told me the fire hydrant that he had. And I think that's a good thing because she also tells the judge how to introduce the topic of the question. Um, and I know he did, but did he have a problem with the contact hearing that he had at that time? Did he show this by one time that he had had it? Well, one of them said he had a problem with the fire hydrant as well. But he hadn't been involved in one of those. Did he show it? I'm not sure he showed it. I'm not sure. If there's no further questions, I'll resume first. Good morning, everyone. My name is Elizabeth. I'm the chief reporter for the New York Times. This question is from the police commission's experts bringing out the facts. They want to find a connection between the fire department and the team that was there in the question about the fire hydrant. I think that's the first issue. Um, the topic of this question is essentially First theory with regards to the limited operating capacity for non-natural operations. And the other thing that we're talking about here is the issue of what's the possible impact of a non-natural fire hydrant through the court. Essentially, there are 40 different jurisdictions that have a non-natural fire hydrant but it's a non-fire hydrant. So, here's a question in the court's order. This was before the court issued an order that the contractors would have to consider the environment. And then the agency would have to consider the environment and then actually want to testify at a jurisdiction provided in the court although she's concerned about the potential consequences of the obligation to the contractor. So, at the end of her next hearing, that's the first sheet which was in fact there were the details of this cooperation with DHS. There's a lot of information about that as you can see from the address that's up here at cdc.gov. So, it's a very interesting jurisdictional cooperation and then there is this cooperation with the Department of Rehabilitation and all the costs of technology and also there's the DHS Council and the Department of Health and Welfare and of course there's some of the practices and some of the metrics that are in the details. Now, as you can see here, there's a section where it says what was done was to stop what the agency was cooperating with DHS and the contractor said which can be changed. Some of which have been real issues. So, I don't know if this is for everyone. If this is for them or if this is for you or some of us perhaps. So, that's it. You can actually go to the DHS website and ask questions. If you have questions for her or for everyone, and so, that's it. It was included in the letter to the Council in September. So, that's what she said. And you know, after we said this is what she said, it's up to you to decide if this is for them,  And then, it was stated in the form that she was a student. So, I don't know if that matters so much because it was stated that she was a student supporting the structure of the agency. So, she was a student supporting the structure of the agency. So, I don't know. I think it is pretty much what we're trying to do as far as what we're trying to do. Okay.
judges: Gould, Berzon, Sessions